UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL STEVENS RODRIGUEZ PEREZ, Petitioner, -against- WARDEN OF ORANGE COUNTY CORRECTIONAL FACILITY, *et al.*, Respondents. | 26-CV-5013 (VSB) **OPINION & ORDER** |

Appearances:

John G. Garzon
Law Offices of John Garzon
Sunnyside, NY
*Counsel for Petitioner*

Brandon Matthew Waterman
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 of Rafael Stevens Rodriguez Perez ("Petitioner" or "Rodriguez Perez") challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release Petitioner from custody or, in the alternative, grant him an individualized bond hearing. (Doc. 1 ("Petition" or "Pet.") at 7; Doc. 16 at 11.) For the reasons set forth below, the Petition is GRANTED IN PART, and the Government is ordered to provide Petitioner with an individualized bond hearing before an immigration judge to determine whether he is a danger to the community or a risk of flight and if his continued detention is justified.

## I. Factual and Procedural Background

### A. *Petitioner's Entry Into the United States*

Petitioner is a 37-year-old citizen of Colombia who has resided in the United States for over four years since his entry into the country. (Doc. 13-1; Doc. 13-4 at 1.) On February 25, 2022, Rodriguez Perez unlawfully entered the United States through the southern border and encountered United States Customs and Border Protection ("CBP") officials near Yuma, Arizona. (Doc. 14 ("Charles. Decl.") ¶ 4.) At the time, Petitioner was accompanied by his partner and children. (Doc. 13-4 at 3.) On February 26, 2022, CBP released Petitioner on parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which was set to expire on March 13, 2022, and issued a Form I-94 with an Alternate to Detention ("ATD") program as a condition of parole. (Charles Decl. ¶ 4; Doc. 13-1.) "On March 9, 2023, Petitioner was terminated from the ATD program because he was no longer required to participate." (Charles Decl. ¶ 4.)

On February 27, 2024, the New York City Police Department ("NYPD") arrested Rodriguez Perez and charged him with Petit Larceny in violation of New York Penal Law ("NYPL") 155.25. (*Id.* ¶ 5.) This charge has been sealed.[1] (*Id.*) On July 19, 2024, the NYPD again arrested Petitioner and charged him with Assault in the 2nd Degree: Intent to Cause Physical Injury with Weapon/Instrument, in violation of NYPL 120.05(2); Assault in the 3rd Degree: With Intent to Cause Physical Injury, in violation of NYPL 120.00(1); and Harassment in the 2nd Degree: Physical Contact, in violation of NYPL 240.26(1). (*Id.* ¶ 6.) These charges have also been sealed. (*Id.*) Moreover, Petitioner notes that neither of these arrests in 2024

---

[1] The Government uses the term "expunged," but New York seals records rather than erasing or expunging them. *See Sealed Criminal Records*, New York State Unified Court System, https://www.nycourts.gov/help/criminal/sealed-criminal-records (last visited Sept. 11, 2026) ("Except for some marijuana crimes, New York has no laws to erase or 'expunge' criminal records. New York uses a process called sealing for some cases.")

resulted in convictions. (Doc. 16 at 4.) On January 22, 2026, the Suffolk County Police Department arrested and charged Rodriguez Perez for Petit Larceny, in violation of NYPL 155.25. (Charles Decl. ¶ 7.) This charge is a misdemeanor. *See* NYPL 155.25. Petitioner was arraigned on these charges and they remain pending. (Charles Decl. ¶ 7.) On August 21, 2026, defense counsel appeared before the state court and requested further adjournment of the case. (Doc. 17 at 2.) The next hearing date is set for October 2, 2026. (*Id.*; *see also* Docket Sheet, No. CR-000320-26SU, Suffolk First District Court.) Petitioner has pleaded not guilty to the petit larceny charge. (*Id.*)

### B. *Petitioner's Arrest by ICE and Removal Proceedings*

On May 27, 2026, while ICE and CPB officers "were conducting an enforcement operation in Queens, New York" to locate and arrest Petitioner, they observed Petitioner's vehicle pass his home and performed a vehicle stop. (Charles Decl. ¶ 8.) Upon confirming that Petitioner's name and appearance matched their "intended target," the officers arrested Petitioner and served him with a signed Form I-200, Warrant for Arrest of Alien, which had been issued earlier that same day. (*Id.*) The Arrest Warrant cites Immigration and Nationality Act ("INA") § 236—codified as 8 U.S.C. § 1226—as its basis.[2] (Doc. 13-3.) Shortly thereafter, ICE transported Petitioner to 26 Federal Plaza, New York, New York for post-arrest processing and a custody determination, where he was served with a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to INA § 212(a)(6)(A)(i), which states that a person is inadmissible if they are "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney

[2] The May 27, 2026 arrest warrant specifically directs Petitioner's arrest by "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. 13-3.)

General." (Docs. 13-4, 13-5.) Petitioner was also issued a Notice of Custody Termination, indicating that he was detained pursuant to "the authority contained in section 236 of the [INA] . . . pending a final administrative determination in [his] case." (Doc. 13-6.) Based on Petitioner's pending petit larceny charge, ICE placed him under mandatory detention pursuant to INA § 236(c)(1)(E), 8 U.S.C. § 1226(c)(1)(E), and transferred him to Orange County Jail in Goshen, New York on May 29, 2026. (Charles Decl. ¶¶ 9–10.) The NTA was filed in Immigration Court on June 2, 2026. (*Id.* ¶ 10.) On July 30, 2026, an Immigration Judge ordered Petitioner's removal. *See Automated Case Information for A-Number: 240-054-821*, Executive Office for Immigration Review. On August 14, 2026, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), which currently remains pending. (*Id.*) Petitioner continues to remain detained without a bond hearing.

### C. *This Instant Action*

Rodriguez Perez filed this instant petition on May 29, 2026 in the Eastern District of New York. (Pet.) On June 12, 2026, the case was transferred to this district and assigned to me. (Doc. 7.) In his Petition, Rodriguez Perez argues, among other arguments, that his arrest and detention violate his due process rights because he is being detained without an individualized bond hearing. (Pet. ¶ 13.) That same day, on June 12, 2026, I issued an order to show cause mandating that Petitioner not be removed from the United States unless and until I order otherwise and stating that Petitioner not be transferred except to a facility within this District, the Eastern District of New York, or the District of Jersey absent further court order. (Doc. 8.)

On June 16, 2026, after an initial telephonic conference with the parties, I set a briefing schedule for the Petition and requested further information from the parties on Petitioner's petit larceny charge and his removal proceedings. (Doc. 11.) On June 22, 2026, the Government

filed its opposition brief, (Doc. 12), a Declaration from Deportation Officer Michael Charles, (Doc. 14), and a response to the Petition, (Doc. 13), with six accompanying exhibits: (1) Form I-94, Parole Form, (Doc. 13-1); (2) Petitioner's Criminal RAP Sheet, (Doc. 13-2); (3) Form I-200, Warrant for Arrest of Alien, (Doc. 13-3); (4) Form I-213, Record of Deportable/Inadmissible Alien, (Doc. 13-4); (5) Form I-862, Notice to Appear, (Doc. 13-5); and (6) Form I-286, Notice of Custody Determination, (Doc. 13-6). On June 26, 2026, Petitioner filed his reply. (Doc. 16.)

Having reviewed the Petition, the materials filed in support thereof, and the parties' further filings, I find that the Petition "present[s] only issues of law," and I thus issue the instant Opinion & Order and adjudicate the Petition without a hearing in light of my obligation to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require." 28 U.S.C. § 2243.

## II. <u>Legal Standard</u>

28 U.S.C. § 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States,'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)), including claims by non-citizens challenging their detention without bail, *see Demore v. Kim*, 538 U.S. 510, 516–17 (2003). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "Federal courts have jurisdiction to hear habeas corpus claims by non-

citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore*, 538 U.S. at 516–17).

## III. Discussion

### A. *Detention Under 8 U.S.C. § 1226(c)(1)(E)*

As an initial matter, the Government contends that Petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(E) because he is "present in the United States without being admitted or paroled" and he has been "charged with and arrested for acts which constitute the essential element of theft or larceny." (Doc. 12 at 7 (internal quotation marks omitted and alterations adopted).) I agree that Petitioner's detention is governed by § 1226(c)(1)(E).

Section 1226 "generally governs the process of arresting and detaining [noncitizens who are present in the United States] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).[3] While § 1226(a) serves as a discretionary detention statute, § 1226(c) serves as a mandatory detention statute, requiring that the government detain certain individuals. *See* 8 U.S.C. § 1226(c) (noting that the Attorney General "shall take into custody" noncitizens under this provision). "Prior to January 2025, § 1226(c) applied only to those who had committed or been convicted of certain offenses." *Peralta-Malla v. Mullin*, No. 26-CV-2903, 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026). However, in January 2025, Congress passed the Laken Riley Act, Section 1226(c)(1)(E), which amended 8 U.S.C. § 1226(c) to add an additional category of individuals subject to mandatory detention under § 1226(c). *Id.* The statute

[3] Although an Immigration Judge ordered Rodriguez Perez removed on July 30, 2026, the section governing post-removal detention, 8 U.S.C. § 1231, does not apply until "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a). "An immigrant court removal order becomes final after dismissal of an appeal to the BIA or upon waiver of the right to appeal." *Cruz v. Decker*, No. 18-CV-9948, 2019 WL 7572975, at *1 n.1 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019). Because Petitioner's appeal to the BIA is still pending, the removal order is not yet "administratively final," meaning that he remains detained under § 1226.

mandates the detention of a noncitizen if two criteria are met. First, the noncitizen must be inadmissible because the noncitizen (1) is present in the United States without having been admitted or paroled, 8 U.S.C. § 1182(a)(6)(A); (2) obtained documents or admission through fraud or misrepresentation, *id.* § 1182(a)(6)(C); or (3) lacks valid documentation to enter the United States, *id.* § 1182(a)(7). *Id.* § 1226(c)(1)(E)(i). Second, the noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." *Id.* § 1226(c)(1)(E)(ii). "In other words, the amendment 'permits mandatory detention to turn not only on a conviction, but also, in some circumstances, on an arrest or charge alone.'" *Peralta-Malla*, 2026 WL 1346325, at *3 (quoting *Nosirov v. Rife*, No. 26-CV-1534, 2026 WL 916602, at *4 (E.D. Pa. Apr. 1, 2026)).

Here, Petitioner contends that a pending charge does not constitute a lawful basis for mandatory detention and that his petit larceny charge does not trigger mandatory detention under § 1226(c). (Doc. 16 at 5–8.) However, the plain meaning of the statute and other cases in this district contradict Rodriguez Perez's argument. Petitioner is inadmissible under 8 U.S.C. § 1182(a)(6)(A) because he is present in the United States without being admitted or paroled, as demonstrated in his NTA, (Doc. 13-5 at 1), and he has been "charged with" and "arrested for" acts that "constitute the essential element of . . . theft [or] larceny," 8 U.S.C. § 1226(c)(1)(E)(ii). "[P]etit larceny fall[s] squarely within the definition of 'larceny' under New York law," and a noncitizen petitioner charged with this crime under New York Penal Code § 155.25 "falls within the scope of § 1226(c)(1)(E)." *Oldacre v. Arteta*, No. 26-cv-02672, 2026 WL 1398650, at *4 (S.D.N.Y. May 19, 2026), a*mended in part on other grounds*, 2026 WL 1718184 (S.D.N.Y. June

12, 2026); *see also Ahmed v. Maldonado*, No. 26-CV-3656, 2026 WL 2042849, at *3–4 (E.D.N.Y. July 15, 2026) (finding that a New York petit larceny charge falls within the ambit of Section 1226(c)(1)(E)'s criminality requirement). Indeed, "Section 1226(c)(1)(E) does not require a final conviction, much less proof beyond a reasonable doubt, that the [noncitizen] in fact committed larceny." *Id.* Thus, I find that Petitioner is properly detained under § 1226(c)(1)(E).

### B. *Due Process*

Next, I evaluate Petitioner's argument that his ongoing detention violates his Due Process rights. (*See* Doc. 16 at 9.) The Government argues that Petitioner is not entitled to a bond hearing based on the length of his detention—which began on May 27, 2026—and his pending petit larceny charge, which requires mandatory detention under § 1226(c) based on a "legitimate" government interest. (Doc. 12 at 8–10.) As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Although there is no statutory obligation to provide a bond hearing under § 1226(c), the Supreme Court has left open the question of whether, in certain circumstances, constitutional due process may require a bond hearing or some other process for detention that is otherwise mandatory by statute." *Peralta-Malla*, 2026 WL 1346325, at *3 (citing *Black v. Decker*, 103 F.4th 133, 143–45 (2d Cir. 2024)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Courts weigh three factors when considering what process is due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

For the reasons articulated below, I conclude that Rodriguez Perez's detention violates his procedural due process rights.

### A. ***The Private Interest***

The first *Mathews* factor requires consideration of Petitioner's private interests affected by the Government's action. 424 U.S. at 335. Here, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

The first *Matthews* factor weighs in favor of Petitioner. I find *Tapia v. Arteta*, No. 26-CV-2527, 2026 WL 1863849, at *4 (S.D.N.Y. June 29, 2026), where the petitioner had been mandatorily detained for approximately four months, instructive. Here, as in *Tapia*, "Petitioner's interest in freedom from detention is particularly strong given that he has been detained for over [three] months, and his continued detention may span many more months, or potentially years, pending his appeal to the BIA and any subsequent appeal to the Second Circuit, if necessary." 2026 WL 1863849, at *4; *see also Peralta-Malla*, 2026 WL 1346325, at *4 (noting that petitioner's detention "for over one month" pursuant to § 1226(c)(1)(E) presented a significant liberty interest). Moreover, Petitioner notes that his continued detention causes financial hardship to his family, "who rely on him for daily support." (Pet. ¶ 13.) Although I acknowledge that Petitioner's "relatively brief period of detention [might] reduce[] the weight of

his interest," *Ahmed*, 2026 WL 2042849, at *4, the circumstances here still warrant finding that a significant private interest is at issue. In *Black*, the Second Circuit declined to establish a bright-line rule for when mandatory detention becomes unreasonably prolonged and requires a bond hearing under Section 1226(c), only explaining "that any immigration detention exceeding six months without a bond a hearing raises serious due process concerns." 103 F.4th at 150–51.

While Petitioner's three-month detention period is not presumptively unreasonable, *see Zadvydas*, 533 U.S. at 701 (recognizing a "presumptively reasonable period of detention" of six months); *see also Oldacre*, 2026 WL 1398650, at *6 (noting that "[the petitioner's] detention, currently about two months, falls well short of the periods the Court of Appeals and the Supreme Court have identified as raising serious constitutional concerns"), I note that a three-month detention period is not negligible. This is particularly true in circumstances like here where the sole ground for Petitioner's detention under Section 1226(c) is based on a pending criminal charge, not conviction. *See Peralta-Malla*, 2026 WL 1346325, at *3–6 (finding that a one-month period of detention presented a significant liberty interest and that procedural due process rights had been violated where petitioner was detained solely on a pending criminal charge without a bond hearing); *Alcantara Guerrero v. Wesling*, 832 F. Supp. 3d 104, 111 (D. Mass. 2026) ("For nearly three months, Alcantara Guerrero has been detained at Plymouth County Correctional Facility alongside criminal inmates [pursuant to Section 1226(c) based on an arrest and charge]. He has been unable to work and is an hour away from his family and home. This constitutes a substantial deprivation of his liberty." (internal quotations marks and citations omitted and alterations adopted)). Thus, I find that the first *Mathews* factor decidedly weighs in Petitioner's favor.

### B. *The Risk of Erroneous Deprivation*

The second *Matthews* factors requires that I evaluate whether there is a "risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. In analyzing this factor, "[t]he only interest to be considered . . . is that of the detained individuals—not the government." *Black*, 103 F.4th at 152. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

The Government contends that Petitioner's detention comports with due process because "ICE has demonstrated that it has a 'particularized assessment of need' for detaining Petitioner, consistent with Congressional mandate to detain such individuals under the Laken Riley Act." (Doc. 12 at 9.) However, noncitizens are afforded virtually no procedural safeguards under Section 1226(c). "[T]he 'procedures used' for section 1226(c) detainees are very few." *Black*, 103 F.4th at 152 (quoting *Mathews*, 424 U.S. at 335). "They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). Moreover, "section 1226(c)'s broad reach means that many noncitizens are detained who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." *Id.* (internal quotation marks omitted). "Section 1226(c) sweeps in people convicted of many nonviolent offenses and does

not take into account when the prior crime was committed, suggesting that the prior conviction may well be a poor proxy for a finding of dangerousness." *Id.* (internal citations omitted). This is especially true where the sole ground of detention under Section 1226(c) is a criminal charge, not a conviction. Several district courts—including Judge Analisa Torres in *Peralta-Malla*—"have applied the *Mathews* factors to habeas petitions brought by those detained under the Laken Riley Act on the basis of unproven, disputed criminal allegations and concluded that mandatory detention, without opportunity for a bond hearing, violated those petitioners' due process rights." 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026) (collecting cases). *But see Oldacre*, 2026 WL 1398650, at *6–7 (denying habeas petition after evaluating petitioner's two-month § 1226(c) detention based on criminal charges, finding that "the particular facts of this case reduce, at least at present, the risk that [the petitioner] is being erroneously detained" because the petitioner "may present a danger to the community, in light of the evidence of violent altercations, and a risk of flight, in light of his relatively recent arrival in the United States [of less than two years]").

I find these opinions persuasive. Here, the government does not "rely on a conviction" to justify mandatory detention without a bond hearing—Rodriguez Perez "has not been adjudged guilty of the offense on which the government relies, no immigration judge has found him dangerous or likely to flee, and the government seeks detention without bond solely because an accusation has been filed." *Peralta-Malla*, 2026 WL 1346325, at *4 (internal quotation marks omitted and alterations adopted). Indeed, "[t]he risk of erroneous deprivation is exacerbated for people like Petitioner who are detained pursuant to criminal arrest or charging under Section 1226(c)(1)(E), as 'liberty is withdrawn at the accusation stage, automatically, and without individualized determination.'" *Ahmed*, 2026 WL 2042849, at *5 (quoting *Peralta-Malla*, 2026

WL 1346325, at *5); *see also Alcantara Guerrero*, 832 F. Supp. 3d at 111 (D. Mass. 2026) ("The risk of erroneous deprivation is high because [the petitioner] is being detained based solely on an arrest and charge for which he is presumed innocent."). Here, Petitioner has pleaded not guilty to his pending petit larceny charge, and the charge continues to be adjudicated. *See* Docket Sheet, No. CR-000320-26SU, Suffolk First District Court (setting next court hearing for October 2, 2026). Nor have Respondents proffered evidence, outside of this disputed criminal charge, that Rodriguez Perez poses a flight risk or is a danger to the community while they continue to detain him. They base his mandatory detention without bond only on his January 2026 petit larceny arrest and charge. (*See* Doc. 12 at 8–10.) Indeed, in enacting the Laken Riley Act, Congress did not "ma[ke] specific legislative findings that those merely arrested or charged with certain crimes are, as a class, dangerous or likely to flee." *Peralta-Malla*, 2026 WL 1346325, at *4.

Moreover, although Judge John G. Koeltl initially denied petitioner's habeas petition in *Oldacre,* finding that a two-month mandatory detention period under § 1226(c) based on larceny charges did not violate petitioner's due process rights, Rodriguez Perez's case is distinguishable. 2026 WL 1398650, at *6–7. Here, Petitioner has been detained for a longer period of time, over three months, he has not been involved in a "violent" dispute or crime, and he has been in the United States for more than four years, unlike the petitioner in *Oldacre*. *See id.* In sum, Petitioner's mandatory detention "without bond on the basis of an unresolved criminal accusation alone and without any individualized determination that continued detention is necessary" presents a grave risk of an erroneous deprivation of his private interest. *Nosirov*, 2026 WL 916602, at *8. Additionally, the minimal burden placed on the Government in granting Petitioner a bond hearing would add value by permitting review of Petitioner's custody

status for the first time in over three months. "Considering the procedures available to Petitioner are essentially nil, then '*any* additional procedural safeguard[ ] . . . would add value.'" *Peguero v. Arteta*, No. 26-CV-01715, 2026 WL 821428, at *4 (S.D.N.Y. Mar. 25, 2026) (quoting *Black*, 103 F.4th at 153).

Therefore, the second *Mathews* factor also weighs in Petitioner's favor.

**C. *The Government's Interest***

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Although I acknowledge the Government's legitimate interest in ensuring "the noncitizen's appearance at proceedings" and "protecting the community from noncitizens" who present a danger, (Doc. 12 at 8 (internal quotation marks omitted)), "the record does not suggest that a bond hearing will impair the Government's interests in ensuring the effective enforcement of immigration [] laws and protecting the community." *Ahmed*, 2026 WL 2042849, at *5. "Immigration detention hearings are routine and impose a minimal cost." *Id.*; *see also Peralta-Malla*, 2026 WL 1346325, at *5 (finding that detention hearings in immigration court impose "a minimal cost" while noting that, on the other hand, "retaining and housing detainees imposes substantial costs as well" (internal quotation marks omitted)). "Where the noncitizen poses no danger and is not a flight risk, all the government does in requiring detention is 'separate[] families and remove[] from the community breadwinners, caregivers, parents, siblings and employees.'" *Black*, 103 F.4th at 154 (quoting *Velasco Lopez*, 978 F.3d at 855). Petitioner has been detained for over three months, without either pre-deprivation notice or a bond hearing at any point, based only on a pending misdemeanor charge. Moreover, Petitioner's detention has "no defined endpoint," as he has

appealed his removal order to the BIA, which remains pending. *Tapia*, 2026 WL 1863849, at *6 (internal quotation marks omitted).

"Given the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in Petitioner's detention without a bond hearing, Petitioner is entitled to more process than he received, which appears to be no process at all." *Id.* at *7 (internal quotation marks and citations omitted). No process is definitely inadequate. Thus, I find that the Government's interests are not well served here, where a noncitizen was simply detained based on a charge rather than a conviction and no process at all has been provided.

Accordingly, having applied the *Mathews* factors, I find that due process entitles Petitioner to an individualized bond hearing before an immigration judge. *See Peralta-Malla*, 2026 WL 1346325, at *6 ("[T]he Court holds that [the petitioner], who is detained [under Section 1226(c)] solely because of disputed, unresolved criminal charges, who was never determined to be dangerous or a flight risk, and whose length of future detention is unknown, is entitled to a bond hearing under the Due Process Clause."); *Ahmed*, 2026 WL 2042849, at *5–6 (ordering a bond hearing for a petitioner detained for approximately two months under § 1226(c)(1)(E) solely based on a pending criminal charge); *see also Nosirov*, 2026 WL 916602, at *8 (requiring that the Government release noncitizen held under § 1226(c) because his "mandatory detention without a bond hearing based solely on an unresolved criminal accusation" violated his due process rights).

The bond hearing must comply with the standard set forth in *Black*, 103 F.4th at 155–59. Specifically, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Further, the immigration

judge must consider alternative conditions of release before making a determination regarding whether to set a bond—that is, the immigration judge must consider alternatives to detention that may ameliorate both risk of flight and dangerousness—and must additionally consider the Petitioner's ability to pay when setting any bond amount. *Tapia*, 2026 WL 1863849, at *7; *see also J.C.G. v. Genalo*, No. 24-CV-08755, 2025 WL 88831, at *11 (S.D.N.Y. Jan. 14, 2025) ("In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider the Petitioner's ability to pay."); *Hernandez-Aviles v. Decker*, No. 20-CV-7636, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("Several other courts in this circuit have likewise found that immigration judges must examine alternatives to detention and ability to pay when determining both flight risk *and* dangerousness." (emphasis in original) (collecting cases)); *Cabrera Galdamez v. Mayorkas*, No. 22-CV-9847, 2023 WL 1777310, at *9 (S.D.N.Y. Feb. 6, 2023) ("At that [bond] hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight, considering Petitioner's ability to pay for a bond and alternatives to detention."). Thus, "the following conditions must be in place at [Petitioner's] individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that [Petitioner] poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider [Petitioner's] ability to pay if a monetary bond is set." *M.P.L. v. Arteta,* No. 25-CV-5307, 2025 WL 2938993, at *7 (S.D.N.Y. Oct. 16, 2025) (quoting *Reid v. Decker*, No. 19-CV-8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020) (alterations in original)).

## IV. Conclusion

For the reasons stated above, the Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED IN PART. The Government is ordered to provide an individualized bond hearing before an immigration judge to Petitioner to determine whether his continued detention is justified by September 25, 2026. At the bond hearing, which must be before a neutral immigration judge, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond. "In determining whether to grant bond, the [immigration judge] shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the [immigration judge] shall consider Petitioner's ability to pay, though it shall remain within the [immigration judge]'s discretion to determine the influence those considerations shall have on the [immigration judge]'s ultimate decision." *Tapia*, 2026 WL 1863849, at *8 (quoting *O.F.C. v. Decker*, No. 22-CV-2255, 2022 WL 4448728, at *11 (S.D.N.Y. Sept. 12, 2022)).

IT IS FURTHER ORDERED that the Government shall file a status letter to update me about Petitioner's status and the outcome of the bond hearing within 7 days of its occurrence. Thus, the Government shall inform me whether or not a bond hearing has been held by October 2, 2026.

IT IS FURTHER ORDERED that, if Petitioner is granted bond, the Government is ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). *Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

SO ORDERED.

Dated: September 11, 2026
New York, New York

Vernon S. Broderick
United States District Judge